76285. CHURCH v. SMS ENTERPRISES.
(368 SE2d 554)

DEEN, Presiding Judge.

Dorothy Church, appellant here, was injured November 9, 1981, when she fell on an allegedly slippery floor while in the course of her regular duties at the plant of her employer, a division of Dundee Mills, Inc. (Dundee), which produces cotton toweling. Approximately four months prior to the fall, Dundee, as a part of its renovation of the plant, had partially enclosed a formerly open area and had had two coats of a urethane finish applied to the concrete floor by appellee SMS Enterprises, Inc. (SMS). According to the contract between Dundee and SMS, a third and final coat of the finishing material (this coat to contain sand or a similar gritty substance) was also to be applied, but, according to the evidence of record, Dundee requested that application of the final coat be postponed until after the enclosure was completed and some machinery installed. Dundee was to notify

SMS when to return to apply this final coat.[1] After the postponement had been arranged, SMS rendered a bill for work completed to date, noting thereon that the bill was for two-thirds of the total price, commensurate with the completion of two-thirds of the work contracted for. The final bill bore a notation that the sum billed thereon represented the final one-third.

While traversing the floor in question en route back to her regular work station after delivering toweling samples to the laboratory (a duty she performed approximately once a week), appellant's right foot slipped and she fell to the floor, severely bruising her right hip, fracturing her right wrist, and sustaining other injuries.[2] She testified on deposition that, because of the floor's shiny, "whitish" appearance, she could not see whether it was wet and, moreover, was not thinking about the floor's condition at the time of the fall; and that she had seen no foreign substance on the floor. She further testified that she regularly traversed the area (at least four or five times a month) and knew that the floor was wet from time to time because of the nature of the activities at the plant. She alleged that SMS was negligent in installing the finish and in not warning Dundee and its employees that it was inherently dangerous; and, moreover, that the floor, in its condition at the time of her injury, was defective.

After Mrs. Church filed her complaint SMS moved for summary judgment, alleging that the finish was not inherently dangerous; that floors' propensity to be slippery when wet is a fact within common knowledge; that appellant had had ample opportunity to observe the nature of the floor's surface; that SMS had no control over the floor's becoming wet; and that, having been notified by Dundee to defer application of the third coat of finish until renovation of that area of the plant was completed, SMS had no right of access to the floor or any reason to know that it had been returned to regular use or that it might be especially hazardous; and, therefore, had no duty to warn — particularly since the floor's condition would be obvious to anyone using it regularly. The Rockdale County Superior Court granted summary judgment, and Mrs. Church appeals, enumerating as error the award of summary judgment. *Held*:

It is the duty of the employer to provide its employees with a safe workplace and to warn them of any unusual conditions that may exist, or of any conditions of which employees may have no knowledge. OCGA § 34-7-23; *Simowitz v. Register*, 60 Ga. App. 180 (3 SE2d 231) (1939); *Nashville, Chattanooga &c. R. v. Hilderbrand*, 48 Ga.

---

[1] The record shows that Dundee actually notified SMS that the third coat could be applied in January following Mrs. Church's accident, and that the coat was applied approximately two weeks thereafter.

[2] Appellant received workers' compensation benefits from her employer.

App. 140 (172 SE 87) (1933). This duty is not abated when construction or renovation is being done at the workplace; indeed, it might be argued that the employer's duty is enhanced in such situations, inasmuch as it would have knowledge which the ordinary employee might not possess. *Atkinson v. Empire Printing &c. Co.*, 76 Ga. App. 206 (45 SE2d 280) (1947). In the instant case Dundee undertook to have such work done in a portion of the plant, and contracted with SMS to do the floor refinishing. The contract was between Dundee and SMS; appellant Church was not a party to the contract but was, at best, arguably an incidental beneficiary. See OCGA §§ 13-3-42; 13-3-44 and annots; Restatement of Contracts, 2d pars. 133, 135, 147. Had she elected to bring an action against SMS as a third-party beneficiary of the contract, she would almost certainly have been deemed to lack standing to do so. Instead, she has sued in tort.

In order for a tort action in negligence to lie, there must be injury to the plaintiff resulting from the defendant's negligence. OCGA § 51-1-1; *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456 (260 SE2d 860) (1979). A tort may occur as a consequence of a relationship which a contract has established between the parties to that contract. *City of Douglas v. Johnson*, 157 Ga. App. 618 (278 SE2d 160) (1981). "Thus, if a contract imposes a legal duty upon a party thereto, which duty exists apart from the specific obligation of the contract, the neglect of that duty is a tort founded upon a contract. [Cits.] In such a case the liability arises out of the breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty. [Cits.]" *Mauldin v. Sheffer*, 113 Ga. App. 874, 878 (150 SE2d 150) (1966).

Moreover, "[t]he law imposes upon persons of professional standing performing medical, architectural, engineering [services], and those performing other and like skilled services, pursuant to their contracts made with their clients, an obligation to exercise a reasonable degree of care, skill and ability, such as is ordinarily exercised under similar conditions and like circumstances by persons employed in the same or similar professions. [Cits.] This is a duty apart from any express contractual obligation. Therefore, persons of this class performing services pursuant to their contracts . . . have been held to be liable in tort for their negligence in failing to exercise the required degree of skill . . . [Cits.] In a proper case the question of whether the defendant exercised the required degree of skill is, like any other question of fact, to be decided by a jury." Id. at 880. In the instant case Dundee had engaged SMS, a professional floor-finisher, to provide a certain finish to a floor in Dundee's plant — a finish that required the application of two coats with a somewhat shiny surface, and a third and final coat which was slip-resistant. There is no evidence that SMS did not go about its performance of the contract in a

workman-like manner. It is undisputed that it was at the instance of Dundee that SMS was prevented from completing the contract as anticipated: that is, by applying the final gritty, slip-resistant coat of finish.

When, as in the case at bar, the work being undertaken is at the instance of the employer — and particularly when, as here, the alleged tortfeasor is working under contract with the employer and must perform the work subject to the employer's requirements as to time and place of performance — and when the employer unilaterally instructs the other party (the contractor) to delay completion of the work until some later time which is convenient for the employer, then we cannot agree with appellant that the contractor can be held liable for an injury which arguably may be a result of the failure to complete the work contracted for. Neither Dundee nor anyone else has disputed that it was upon Dundee's instructions that SMS did not complete the work as originally contemplated, by applying the final, slip-resistant coating promptly after applying the two base coats. Nor does Dundee — or anyone else — dispute that SMS had no access to the area for some time after it was ordered to postpone completion of the work and before Mrs. Church's accident, and therefore had no means of inspecting or in any way exercising dominion and control over the floor, or of issuing any warning that, arguendo, might have been appropriate.

Inasmuch as at the time of the accident the premises were totally under the dominion and control of the employer, Dundee, and Mrs. Church was engaged in her regular duties when the unfortunate incident occurred, her sole recourse is against the employer, through the statutorily provided means of which, according to the record, she has already availed herself. OCGA § 34-9-11; *Floyd v. McFolley*, 131 Ga. App. 4 (205 SE2d 29) (1974); *Echols v. Chattooga Mercantile Co.*, 74 Ga. App. 18 (38 SE2d 675) (1946). This is not to imply that, under different circumstances, Church would necessarily be denied her right to bring an action against any third-party tortfeasor. *Floyd v. McFolley*, supra at 5. Moreover, there is no circumstance here that would raise such issues as whether a statutory employer was involved. It is simply that there is no competent evidence of record to sustain appellant's contention that appellee SMS was in any way negligent in the performance of its work or that, had it been permitted to complete the installation of the floor finish as originally contracted for, a dangerous or defective condition would have been created.

When the defendant moves for summary judgment, he has the burden of piercing the pleadings and affirmatively negating one or more essential elements of the plaintiff's case. OCGA § 9-11-56; *Calhoun v. Eaves*, 114 Ga. App. 756 (152 SE2d 805) (1966). The record in the instant case reveals that defendant/appellee SMS succeeded in

doing this. We find that the contentions advanced in appellee's brief in support of its motion for summary judgment and set forth in this opinion, supra, are valid, and that, under a proper analysis, there is no genuine issue of material fact. The trial court correctly granted summary judgment to appellee.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED APRIL 5, 1988.

*M. Glenn Howell, Sr.*, for appellant.

*I. J. Parkerson*, for appellee.